# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 4197 | **DATE** | 8/25/2003 |
| **CASE TITLE** | Sherry Thomas vs. Chrysler Financial, LLC | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due _____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons stated in this memorandum opinion and order, Chrysler's motion for summary judgment is granted and this action is dismissed. (17-1)

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | AUG 27 2003 | |
| ✓ | Notices mailed by judge's staff. | | date docketed | 39 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | 8/26/2003 | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | date mailed notice | |
| SN | courtroom deputy's initials | 03 AUG 26 PM 3:18 Date/time received in central Clerk's Office | SN mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SHERRY THOMAS,                )
                              )
            Plaintiff,        )
                              )
    v.                        )    No.  02 C 4197
                              )
CHRYSLER FINANCIAL, LLC,      )
                              )
            Defendant.        )

MEMORANDUM OPINION AND ORDER

DOCKETED
AUG 2 7 2003

Sherry Thomas ("Thomas") has sued her ex-employer Chrysler Financial, LLC ("Chrysler"), charging that its failure to offer her a position as Credit Analyst was motivated by race and was therefore a violation of Title VII (42 U.S.C. §§2000e to 2000e-17) and of 42 U.S.C. §1981.[1] Chrysler has moved for summary judgment under Fed. R. Civ. P. ("Rule") 56, and both sides have complied with this District Court's LR 56.1.[2] For the reasons stated in this memorandum opinion and order, Chrysler's motion is

---

[1] Thomas' Complaint also contained other charges against Chrysler, but this Court dismissed all her other claims without opposition on June 26, 2003.

[2] LR 56.1 is designed to facilitate the resolution of Rule 56 motions by calling for evidentiary statements and responses to such statements (in each instance with a record citation), thus highlighting the existence or nonexistence of factual disputes. This opinion cites to Chrysler's LR 56.1(a)(3) statement as "C. St. ¶ --." Thomas' response and her statement of additional facts, which are numbered consecutively, are cited "T. St. ¶ --" (though where she does not dispute Chrysler's version, a "C. St." citation alone suffices). This opinion employs the same "C." and "T." abbreviations in referring to the parties' exhibits and memoranda.



granted and this action is dismissed.[3]

## Summary Judgment Standards

Familiar Rule 56 principles impose on movant Chrysler the burden of establishing the lack of a genuine issue of material fact (Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). For that purpose this Court must "consider the evidentiary record in the light most favorable to the non-moving party...and draw all reasonable inferences in his favor" (Lesch v. Crown Cork & Seal Co., 282 F.3d 467, 471 (7th Cir. 2002). And Pugh v. City of Attica, 259 F.3d 619, 625 (7th Cir. 2001) has echoed the teachings of Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986):

> A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

As with any summary judgment motion, this Court accepts nonmovant Thompson's version of any disputed facts, but only so long as it is supported by record evidence. What follows in the Facts section is culled from the parties' submissions in those terms.

## Facts

Thompson, an African-American, began working for Chrysler in

---

[3] This Court's oral statement (and partial ruling) during the June 26, 2003 status hearing had indicated that Chrysler's motion was a likely loser. But this opinion has explained how and why Chrysler has seized victory from the potential jaws of defeat.

2

1996 as a temporary employee in its Kansas City, Missouri office (C. St. ¶2). Chrysler hired her as a full-time Customer Service Representative in 1997, and in 1999 she transferred to the Chicago Zone office (id. ¶¶2-3). On April 23, 2001 Chrysler promoted her to Customer Service Supervisor (id. ¶9).[4] About a month later Chrysler informed Thomas and the rest of the employees in her department that all Chicago Customer Service positions were being transferred to Philadelphia as part of a company-wide reorganization (id. ¶12). Employees were told they could transfer to Philadelphia and retain their current positions, but otherwise Chrysler would make "every effort" to find them alternative employment (id.).

Thomas wanted to stay in the Chicago area, so in May or June she applied for one of the Credit Analyst positions that had recently become available (C. St. ¶¶14, 16-18). According to Chrysler's internal job posting, some prior experience as a Customer Service Supervisor (but for no specified time period) was necessary to qualify for that position (id. ¶18; C. Resp. Exs. 1, 4).

Retail Credit Manager David Pack ("Pack") interviewed at least 14 candidates, including Thomas and two other Customer Service Supervisors in the local office, for the Credit Analyst

---

[4] Because all other relevant events except for the date of filing this action occurred in 2001, this opinion omits the year designation when referring to dates during 2001.

spots (C. St. ¶¶17, 19). After the interviews had been conducted but before any decisions were made, Chicago Zone Office Manager Ben Boggs ("Boggs") instructed Pack that only applicants with at least one year of supervisory experience were eligible for the Credit Analyst positions (id. ¶20). Pack then hired the other two local Customer Service Supervisors, each of whom had approximately one year's experience (C. St. ¶¶23-24). According to Thomas, Pack left her a voicemail stating that she was not hired as Credit Analyst because she needed at least six months of experience as a Customer Service Supervisor (at the time she had held that position for only about 1-1/2 months) (T. St. ¶22; T. Ex. 2 ¶9).

By early October the Customer Service Department was officially transferred to Philadelphia (C. St. ¶46). Thomas stayed at the Chicago office with the hope that she would be promoted to Credit Analyst after she had been a Customer Service Supervisor for six months (Thomas Aff. ¶9). For the time being she retained her Supervisor job title (even though there was no one left to supervise) and was given the few remaining tasks within the department, but she was told she would likely be laid off once those tasks were done (C. St. ¶48).

Nothing in the record shows that any new Credit Analyst spots ever became available. One of the two people originally selected for the Credit Analyst position did take maternity leave

4

before she ever started in the position, then resigned in November, but while she was away the workload within the Retail Credit Department reduced dramatically, so that Chrysler saw no need to hire a new Credit Analyst to replace her (C. St. ¶¶24, 26).[5]

On December 14 Thomas submitted her resignation (C. St. ¶53). Thomas then filed a timely EEOC charge of race discrimination, and on March 29, 2002 EEOC issued a right-to-sue notice. Thomas then timely instituted this action.

## Race Discrimination

Disparate treatment claims such as the ones Thomas presents[6] have traditionally been analyzed under what have been referred to as the "direct" and "indirect" methods. Under the direct method of proof, a plaintiff may establish[7] race discrimination by

---

[5] Thomas disputes that there was a reduction of work and suggests that this was just an excuse not to promote her (T. St. ¶26), but she offers no evidence to support that contention.

[6] Just last week our Court of Appeals aligned itself with other circuits by holding that at-will employees such as Thomas may invoke Section 1981 (Walker v. Abbott Labs., No. 02-1536, 2003 WL 21956455, at *3-*6 (7th Cir. Aug. 18)). All elements of a disparate treatment claim under Section 1981 and Title VII are essentially identical and should be analyzed in the same manner (Bratton v. Roadway Package Sys., Inc., 77 F.3d 168, 176 (7th Cir. 1996)). This opinion therefore conducts a single analysis that applies to both of Thomas' claims.

[7] At this stage, of course, Thomas need not "establish" or "prove" or "show" anything, but must merely demonstrate that a genuine issue exists as to a material fact. This opinion may nonetheless employ one or several of those quoted terms because that is the terminology used by the cited cases.

providing evidence--either direct or circumstantial--of discrimination (Troupe v. May Dep't Stores Co., 20 F.3d 734, 736-37 (7th Cir. 1994)).[8] Alternatively a plaintiff may establish her case indirectly by demonstrating all the elements of a prima facie case as originally laid out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).

Because Thomas cannot proceed under the direct method,[9] she must demonstrate, under McDonnell Douglas and its progeny, (1) that she was a member of a protected class, (2) that she

---

[8] Chrysler incorrectly argues that Thomas is precluded from using the direct method because she offered no direct evidence of racial discrimination (C. Mem. 6). But parties should take care not to conflate the terms "direct method" and "direct evidence," as found even in some Seventh Circuit opinions--for example, Grayson v. City of Chicago, 317 F.3d 745, 748 (7th Cir. 2003) has said:

> Grayson has no direct evidence of discrimination and so proceeds under the burden-shifting mechanism of McDonnell Douglas....

[9] Thomas does accuse Boggs of making a racist statement at a meeting that took place nearly six months after Thomas resigned, suggesting that evidences an unlawful motive when he had earlier instructed Pack to hire only those individuals with one year of experience (T. St. ¶69). But on that score Thomas cites only allegations in a complaint in another lawsuit against Chrysler--clearly not evidence that may be considered under Rule 56(e). Moreover, even beyond that fatal defect, Thomas makes no attempt to meet the other required standards of relevance and probative value (Schuster v. Lucent Techs., Inc., 327 F.3d 569, 576 (7th Cir. 2003)). That is of course a critical factor that renders this Court's tentative June 26, 2003 oral indication (which had mentioned the alleged Boggs statement based on Thomas' legal memorandum, without having gone back to see the source on which she sought to rely) inapplicable to the record as fully analyzed here.

6

applied for and was qualified for the Credit Analyst position, (3) that Chrysler did not promote her and (4) that it instead promoted someone who was similarly situated but outside of the protected class (Ajayi v. Aramark Bus. Servs., Inc., 336 F.3d 520, 531-32 (7th Cir. 2003)). If she were to do that, the burden would shift to Chrysler to "articulate a legitimate, nondiscriminatory reason for its actions" (Grayson, 317 F.3d at 748)).

Until now our Court of Appeals has characterized the last volley of the McDonnell Douglas ping-pong sequence as requiring Thomas to submit evidence suggesting that every plausible justification Chrysler conjures up is pretextual (see, e.g., Debs v. N.E. Ill. Univ., 153 F.3d 390, 395 (7th Cir. 1998))--an approach that this Court has always viewed as being in substantial tension with the universal concept that if a party's credibility is successfully attacked in some respect, the trier of fact is not required to credit other evidence offered by that party even though it is not controverted directly. But although the ensuing analysis here demonstrates that this case does not provide the occasion to do so, it would appear that the earlier-framed burden-shifting scheme may need to be revisited in light of the Supreme Court's recent decision in Desert Palace, Inc. v. Costa, 123 S.Ct. 2148 (2003). It is worth a momentary digression to explain why.

Desert Palace (id. at 2155, quoting 42 U.S.C. §2000e-2(m)(emphasis added)) held that under the Civil Rights Act of 1991, which amended Title VII, "a plaintiff need only present sufficient evidence for a reasonable jury to conclude...that 'race, color, religion, sex, or national origin was a *motivating factor* for any employment practice,'" at least in the context of mixed-motive cases.[10] It would seem to follow that if an employee can raise an inference of discrimination by satisfying the initial elements of a prima facie case, an employer may not necessarily escape liability altogether by offering an alternative explanation for its action. Once the potential exists for the alleged discriminatory motive to be viewed reasonably as a motivating factor at all, the employer's proffer of a legitimate, nondiscriminatory justification would arguably affect the scope of remedies available to the plaintiff, but not the employer's underlying liability (42 U.S.C. §2000e-5(g)(2)(B)).

But to return from what may prove to be a new analytical world to the case at hand, the proper role of legitimate, nondiscriminatory reasons post-Desert Palace would come into play only if Thomas were first to meet all the elements of the prima facie test (Jones, 302 F.3d at 741-42). And this she has failed to do.

---

[10] By contrast, such cases as Jones v. Union Pac. R.R., 302 F.3d 735, 742 (7th Cir. 2002)(emphasis in original) have stated the standard in terms of race being "*the determining factor*."

Chrysler does not dispute that Thomas was (and is) a member of a protected class and that she applied for the promotion to Credit Analyst but was rejected. So the only points of contention are found in the second and fourth elements of the prima facie test.

As to the first of those, there is indeed a genuine issue as to whether Thomas was qualified for the Credit Analyst position. Both parties agree that after all the interviews were conducted, Boggs instructed Pack to hire candidates with at least one year of supervisory experience. But Thomas claims that Pack told her she did not get promoted because she did not have six months' experience as a Customer Service Supervisor, while the internal job posting said nothing about any required amount of experience as a Supervisor. And there is no question that Thomas' performance that had led to her promotion was exemplary, nor had anything adverse developed during her brief tenure in the Supervisor position.

With the evidence in that posture, a reasonable juror could find that Thomas was qualified for the Credit Analyst position (cf. Farrow v. Humana Health Plan, Inc., 69 F. Supp. 2d 1050, 1058 (N.D. Ill. 1999), which found a material issue of fact whether master's degree was required for promotion where the job posting did not list the requirement and where several former employees did not have master's degrees). So Thomas' ability to

prove a prima facie case turns on whether she has identified any similarly situated individual who was given the promotion that was denied to her.

In making the determination whether two employees are similarly situated, a court must look to all factors relevant to the position sought--factors that often include education, experience and performance (Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617 (7th Cir. 2000)). Thomas need not show that she was identical in every respect to one of the candidates selected, but she must show substantial similarity in all material respects (Patterson v. Avery Dennison Corp., 281 F.3d 676, 680 (7th Cir. 2002)).

Chrysler argues that Thomas was not similarly situated to either of the two individuals who were selected for the Credit Analyst positions because they each had held the Customer Service Supervisor position for at least a year while Thomas had just been promoted to the position a little more than a month before. That position carries the day. It is clear from the job posting that supervisory experience was one of the criteria for the Credit Analyst position, and it is not up to this Court to second guess either what factors Chrysler should employ when evaluating candidates for the job or the weight to be given to a greater or lesser level of conformity to any such factor (experience is a prime example of that)(Gordon v. United Airlines, Inc., 246 F.3d

10

878, 889 (7th Cir. 2001)).

Thomas argues that she was similarly situated to Mr. Rory Mahoney ("Mahoney"), who was originally rejected for the Credit Analyst position in June but was given the position over a year later--in August 2002[11]--without ever having worked as a Customer Service Supervisor (T. St. ¶73). That comparison does not work, for Mahoney was promoted to Credit Analyst eight months after Thomas resigned from Chrysler (id.). Had a Credit Analyst promotion remained open all the while, or had Thomas stayed with Chrysler and applied for the Credit Analyst position in August 2002 when Mahoney got the job, Thomas could arguably have a reasonable basis for comparing herself to Mahoney. But under the present facts Thomas has failed to identify any similarly situated individual who was promoted to the Credit Analyst position.

## Conclusion

Even with the benefit of the required reasonable inferences in her favor, Thomas has not met the fourth requirement of the McDonnell Douglas prima facie test. So she has not succeeded under either the direct or the indirect method of proving her failure to promote claim. There is no genuine issue of material

---

[11] This is another factor in the record that was not fleshed out until Chrysler filed its reply memorandum, which when placed in its proper light also explains why the outcome differs from this Court's earlier June 26 oral indication.

11

fact, and Chrysler is entitled to a judgment as a matter of law. Its motion for summary judgment is granted, and this action is dismissed.

_____
Milton I. Shadur
Senior United States District Judge

Date: August 25, 2003